**FILED**

JAMES J. VILT, JR. - CLERK

MAY - 6 2026

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA

v.

**FOLLY H. ABOUSSA,**
a/k/a KOFI HOLLA ABOUSSA

INDICTMENT

NO. 3:26-CR-49-DJH

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 1343
28 U.S.C. § 2461

The Grand Jury charges:

### COUNTS 1-2
*(Wire Fraud)*

1.      On or about and between June 13, 2020 and November 20, 2021, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, **FOLLY H. ABOUSSA,** defendant herein, devised and intended to devise a scheme to defraud the Small Business Administration (SBA), and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted writings, signs, signals, pictures and sounds by means of interstate wires for the purposes of executing the scheme.

### *Background*

2.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to businesses suffering the economic effects caused by the COVID-19 pandemic.

3.      The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small

businesses. The SBA is headquartered in Washington, DC, and maintains its computer servers outside the Western District of Kentucky. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

*The Economic Injury Disaster Relief Program*

5. One such response to the COVID-19 outbreak was an expansion of an existing disaster-related program, the Economic Injury Disaster Loan ("EIDL"), to aid small businesses and other eligible entities in regions affected by declared disasters.

6. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees certified by the applicant. The advances did not have to be repaid. The EIDL proceeds could be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred. However, such loan proceeds were not intended to replace lost sales or profits or for expansion of a business.

7. Unlike certain other types of SBA-guaranteed loans, applicants applied for EIDLs directly to the SBA via an online portal and application. EIDL funds were issued to applicants

directly from the United States Treasury. The EIDL application process required applicants to provide information about the business's operations and the business owner, including:

     a.     the date the business was established;

     b.     the number of employees;

     c.     information as to the gross revenues for the business for the twelve months prior to January 31, 2020;

     d.     the cost of goods sold for the twelve months prior to January 31, 2020; and

     e.     information as to any criminal history of the business owner.

8.     The SBA calculated the possible loan amount, not to exceed $2 million, based on the entity's gross revenues and cost of goods sold provided in the application.

9.     EIDL applicants electronically certified that the information provided was true and accurate to the best of the applicant's knowledge and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

### *The Scheme to Defraud*

10.     Between 2015 and 2020, **FOLLY H. ABOUSSA** established multiple business entities in various states, including Kentucky, Arizona, and Washington, in which he had purported interests as an owner and/or officer. The purposes set forth for these entities covered a wide range of activities, including professional services, education, retail sales, and religious counseling. Many of these entities, including but not limited to including but not limited to Frazier Management Group Inc. and Royal Foundation of Holla Inc., existed in name only and did not actually conduct business during the relevant time period.

11.     On or about and between June 13, 2020 and November 20, 2021, **FOLLY H. ABOUSSA** summitted at least thirteen applications for EIDL funds, under the program as expanded by the CARES Act. The applications each contained materially false information with respect to the number of employees, costs, and revenue of the entities. At least two of these fraudulent applications resulted in payment of EIDL funds to the companies, $24,000.00 in total, which **FOLLY H. ABOUSSA** used for his personal benefit.

12.     It was part of the scheme that on June 13, 2020, **FOLLY H. ABOUSSA** electronically filed an application (#3304473022) for an SBA EIDL for Frazier Management Group Inc. In the application, **FOLLY H. ABOUSSA** falsely claimed that Frazier Management Group Inc. had twelve employees and $5,000.00 in gross revenue for the twelve months prior to January 31, 2020. The fraudulent application resulted in a $10,000.00 payment of EIDL funds, to which the company and **FOLLY H. ABOUSSA** were not entitled.

13.     It was part of the scheme that on June 23, 2020, **FOLLY H. ABOUSSA** electronically filed an application (#3305971445) for an SBA EIDL for Royal Foundation of Holla Inc. In the application, **FOLLY H. ABOUSSA** falsely claimed that Royal Foundation of Holla Inc. had twelve employees and $48,000.00 in gross revenue for the twelve months prior to January 31, 2020. The fraudulent application resulted in a $14,000.00 payment of EIDL funds, to which the company and **FOLLY H. ABOUSSA** were not entitled.

14.     On or about the dates listed below, in the Western District of Kentucky, Jefferson County, Kentucky, **FOLLY H. ABOUSSA,** for the purpose of executing the herein-described scheme to defraud, and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce the following writings, signals, pictures, and sounds:

4

| COUNT | DATE | TRANSACTION |
|---|---|---|
| 1 | 06/13/2020 | EIDL loan application number 3304473022 transmitted for Frazier Management Group Inc. by wire from the Western District of Kentucky to the SBA located outside of Kentucky. |
| 2 | 06/23/2020 | EIDL loan application number 3305971445 transmitted for Royal Foundation of Holla Inc. by wire from the Western District of Kentucky to the SBA located outside of Kentucky. |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

If convicted of any violation of Title 18, United States Code, Section 1343, **FOLLY H. ABOUSSA,** the defendant, shall forfeit to the United States any property constituting or derived from any proceeds obtained, directly or indirectly, as the result of any such violation.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

A TRUE BILL.

Redacted

FOREPERSON

KYLE G. BUMGARNER
UNITED STATES ATTORNEY

KGB:CEK

UNITED STATES OF AMERICA v. **FOLLY H. ABOUSSA**, a/k/a KOFI HOLLA ABOUSSA

## PENALTIES

Counts 1-2 (each)   NM 20 yrs./$250,000/both/NM 3 yrs. Supervised Release
FORFEITURE

## NOTICE

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual | Felony: | $100 per count/individual |
| | $125 per count/other | | $400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule.  You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court.  18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1.   **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

For offenses occurring after December 12, 1987:

No **INTEREST** will accrue on fines under $2,500.00.

**INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing.  This rate changes monthly.  Interest accrues from the first business day following the two week period after the date a fine is imposed.

**PENALTIES** of:

10% of fine balance if payment more than 30 days late.

15% of fine balance if payment more than 90 days late.

2.   Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3.   Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both.  18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.